Good morning, Your Honors. Excuse me, and may it please the Court. Lance Jasper appearing on behalf of the appellant, Gene Harris. If I may, I'll address the issue of res judicata first, then bankruptcy jurisdiction, the Barton Doctrine, and derivative immunity. Your Honors, we submit that Mr. Harris's claims in this suit are not barred by res judicata because Mr. Harris has not yet had an opportunity to present those claims in court. Mr. Harris attempted to make arguments in the bankruptcy court similar to the claims that he raises today during the 363 sale in his bankruptcy case. He was prevented from doing so. The bankruptcy court ruled that he lacked standing even to participate in that sale because he was the debtor of an insolvent estate. So he had no property interest in what was being sold. That was the bankruptcy. The claim was he had a property interest in the agreement, which was filed post-petition. Correct. Now, after the ruling of the bankruptcy court saying you have no standing, let's suppose that ruling was incorrect. They did indeed have standing, and that he did have some justiciable right to relief, and the bankruptcy court was wrong. Did Mr. Harris apply for a stay of the sale? He did not. So therefore... I should be more careful, Your Honor. He requested one, my understanding is, and it was denied. Did he appeal the denial of the stay? My understanding is he did not. So the sale went forward. That's correct. So it's all moot now, isn't it? The 363 sale is moot, and that was the holding of the district court in the Ninth Circuit on appeal. But this is a different lawsuit, Your Honors. This is a lawsuit brought under the settlement agreement. Mr. Harris has standing to bring this lawsuit because he was a party to that agreement. But he was denied relief under that agreement by the bankruptcy court that was affirmed by the district court, and he has not appealed the error of the bankruptcy court and the district court in failing to rule on his claim. Therefore, it's restituted against him. Well, that's our point, Your Honor, that he was never offered an opportunity even to participate in the sale. And without having the opportunity to participate in the sale, whatever the result of it was, it can't be restituted against him. This precise argument was made by Appellees, the Whitman defendants, on motions to dismiss this case before the bankruptcy court. They argued it was restituted because of the 363 sale. The bankruptcy judge rejected that argument, reminding the parties that he had not given Mr. Harris an opportunity to present any argument. And it's the law under Shimmels and Batia and other cases from this court that absent an opportunity to present argument, res judicata cannot apply. Now, there has been an argument in the Whitman defendants' letter brief to the court that both Mr. Harris and his wife, Mrs. Harris, had an opportunity to challenge the 363 sale. We submit as discussed that Mr. Harris did not have that opportunity. To the extent the argument is that he had his opportunity through his wife, in other words, that they were in privity, we have three responses to that. The first is that that same argument was made to the bankruptcy court. The bankruptcy court was intimately familiar with the parties and with the case, having overseen Mr. Harris's bankruptcy. And the bankruptcy court rejected that argument when it rejected res judicata. The second point we'd make is we'd submit the record. Why did it reject it? I mean, why was the wife barred from making that argument? The ‑‑ I'm sorry. The question is why was Mrs. Harris barred from making the argument. We would submit to the court that she wasn't barred, but because she was not in privity with Mr. Harris, the fact that she failed to raise the argument cannot be used against Mr. Harris, who never had an opportunity. Was it community property, the $218,000? My understanding is that it was not and that it's set forth expressly in the settlement agreement and the mutual release that it's not. We submitted in connection with our letter brief to the court a declaration of Mrs. Harris to the bankruptcy court saying that starting in the 1980s, she and her husband held their assets separately pursuant to separate property agreements. That, in fact, is excellent evidence that what they were not was so precisely identified an interest that they represented exactly the same rights. For the 363 sale, if Mrs. Harris had, for instance, purchased property out of that sale, she would have held it entirely by herself. Mr. Harris would have had no right or claim to it. And so when it came to opposing the sale, they weren't representing the same interests and privity would not apply. I think we understand your position on the race for a third crime. Thank you, Your Honor. Let's go to the others. We note also that the court must first conclude it has jurisdiction before applying the rest judicata defense. And we've argued in the briefs that there isn't jurisdiction here. There are two potential kinds, core and related to bankruptcy jurisdiction. We submit to the court that this is not a core bankruptcy matter because it does not arise under the bankruptcy code and because it's the kind of proceeding that can exist in a non-bankruptcy court. That's the test under Eastport Associates and Dunmore and Grunts and other cases from this court. This is a state law action for breach of contract under California law. It's not an action under the bankruptcy code, and it could have proceeded in the state court where Mr. Harris filed it had it not been removed to bankruptcy court. Indeed, we would submit that this is precisely the kind of case that the Supreme Court warned about in Northern Pipeline and that this court warned about in Castle Rock and Cinematronics. This is an action for breach of contract. It does not fall within any of the specific provisions of core jurisdiction set forth in 28 U.S.C. 157b2. Cinematronics, following the Supreme Court, said that's the kind of case that needs to stay outside of bankruptcy court because it's the kind of case traditionally decided by those other courts. It would violate separation of powers to have a non-Article III judge, a bankruptcy court, decide that kind of a case. Mr. Harris would just like to make one point with respect to that. Well, it would be approved by the district court in Article III judge, right? Correct. If the bankruptcy court had considered this as a related to matter, that court would have submitted proposed conclusions of law which would have been reviewed by the district court. We would note, though, that that's a distinction that makes a difference. In Dunmore, this court held that it's an abuse of discretion for a bankruptcy court and a related to matter to make a final determination on the merits. And we submit, as we have in the papers, that this case is also not related to bankruptcy, and there's only one point we'd like to make on that. The test for related to jurisdiction under PCOR and FEETS is a prospective test. It's not a retrospective test. The question is, when Mr. Harris filed this lawsuit in 2006, could the outcome of that lawsuit have any conceivable effect either on him as a debtor or on the estate being administered in bankruptcy? We submit the answer to that is no. Mr. Harris filed this lawsuit 18 months after receiving his discharge as a debtor in bankruptcy, so there could be no effect on him as such. With respect to the estate, nine months before Mr. Harris filed the suit, the trustee swore to the bankruptcy court that there were no assets left and that the estate was fully administered. She asked to be discharged of her duties, and she asked that the case be closed. We submit that that being the state of affairs under FEETS and under Valdez Fisheries, that related to jurisdiction should not apply to this suit. And we would note that there hasn't yet been identified a potential prospective effect, specific prospective effect of Mr. Harris' suit on the bankruptcy case. If there are no questions, I'll move then to the issues of the Barton Doctrine and judicial immunity. Please do. Your Honors, we submit there are two problems with dismissing this case pursuant to the Barton Doctrine. The first is that the Barton Doctrine is and always has been a way of protecting a bankruptcy court's administration of an estate. The concern in Barton and in Barton cases was that someone would go to another court, they'd file a lawsuit, that lawsuit would come to a conclusion, and it would have an effect on assets without the bankruptcy court ever having a say in the matter. And that would, of course, interfere with effective administration. Well, that's not what happened in this case. Mr. Harris' suit was within days removed to the same bankruptcy court and the same bankruptcy judge that oversaw his bankruptcy case. When that happened, any potential concerns under Barton simply evaporated because the case was within the bankruptcy court's control. The second problem with dismissing based on Barton is also the problem with dismissing for derivative immunity. Mr. Harris has alleged ultra-virous acts in his complaint. Under Westinghouse and Hinduja and other decisions of this court, those allegations at this point must be taken as true and construed in the light most favorable to Harris. He alleges that the Whitman defendants breached a court-ordered settlement agreement almost immediately after that was made an order of the court. This court held in Seymour Heath that a trustee does not have the power to violate a court-approved settlement agreement. In fact, in that case, the court held that even a bankruptcy judge could not approve that kind of an action. We submit to the court as a matter of law under Vrooman with respect to Barton and under Bennett with respect to immunity that those defenses do not apply to allegations of ultra-virous acts. Since I have a moment, Your Honors, I'll turn back to another point based on court jurisdiction. Throughout this case, the Whitman defendants have argued and the bankruptcy court and district courts agreed that this is a core proceeding under Harris-Fine-Mills. As set forth in our papers, we submit that Harris-Fine-Mills and this case are distinguishable, materially distinguishable. In Harris-Fine-Mills, the court held that a lawsuit that was a non-core matter, a state law action, could nevertheless be decided by a bankruptcy court because it was inextricably intertwined with what was a core matter, a bankruptcy sale. The purchasers of a 363 sale brought a lawsuit against the trustee right on the heels of that sale, and they said the sale was a fraud. In order for that lawsuit to exist... The purchasers said it was a fraud? I'm sorry? The purchasers said it was a fraud? Correct. And yes, that's my understanding. In order for that lawsuit to go forward, they would need to prove up that sale. In fact, the entire lawsuit would be about that sale, and that's why they were inextricably intertwined. One couldn't exist without the other. We submit on allegations of the complaint that the same is not true in this case. Mr. Harris alleged breaches of the settlement agreement, both of which happened before the bankruptcy sales in this case. He alleges a breach in November of 2002 and another one that happened at the latest, May 1 of 2003. The bankruptcy sales don't happen in Mr. Harris's case until May 7, 2003 and June 30, 2003, which is later. Since Mr. Harris could have brought this suit before either of those sales happened, we submit they're necessarily extricable. But isn't he attacking the very assets which were sold in bankruptcy, saying they should have been sold under those terms? The same assets are at issue. He's saying that the violations, the transfer of those assets violated the settlement agreement. Right. And that's his claim in this case. So why isn't that a court proceeding, since it deals with the assets that were in the estate? Because the action is styled as for breach of contract. It raises only state law claims. And so under Cinematronics, we submit it's not a core matter. I'll reserve my time briefly, but Cinematronics is actually quite close to this case. That was a case where a representative of the estate, during the bankruptcy case, post-petition, entered into a contract and was subsequently sued for breach of contract while the bankruptcy case was pending. This court said, certainly that might have some effect on the administration of the estate. Certainly that has something to do with the administration of the estate. But it's not a core bankruptcy matter because it's an action for breach of contract, not within 157B2B-N. I'd like to reserve the balance of my time. All right. Are you going to separate your time between other people? Good morning. May it please the Court, Your Honor. I'm going to start with the issue of res judicata on Mr. Kaplan. And then Mr. Dykes is going to address the issues of jurisdiction and judicial immunity. And Ms. Oliver is going to address the issue of the Barton Doctrine. Okay. So on the issue of res judicata. You keep your own time. Yes, sir. This is what sometimes courts refer to as a thinly veiled collateral attack on a judgment of the bankruptcy court. And I think for various reasons, the matter is res judicata. As suggested in the court's request for a letter briefing, we are here today after almost nine years of litigation, including litigation in the bankruptcy court, which was appealed to the bankruptcy appellate panel, affirmed actually by the district court, and then affirmed by this court. I think it's important to go back and look at what happened in the underlying bankruptcy court case because it really establishes why these claims that Mr. Harris is bringing under the guise of a breach of contract claim are res judicata. First, I note that this was a 363 sale. And 11 U.S.C. 363 gives certain protections to the purchasers of assets. That is, if it's been determined by the court that it's a good faith purchaser, one of the things you can't do is take an appeal unless you've stayed the sale of the property. We've been over that, or you went over that with Mr. Jasper. And I will quote from a case. This is why it's important. This is why that sale applies to Mr. Harris's claims, whether or not he can show he had no standing. And it says, A proceeding under Section 363 is an in rem proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding. And I was quoting from Matt L. Woods Corporation v. Jekus, which is 861 F. 2nd 1012. That's a case that wasn't in our letter brief on the issue of res judicata. So Mr. Harris, like the rest of us, is subject to the bankruptcy court's determination, which was not overturned on appeal, as to what the property rights were in that property. The only way Mr. Harris gets around that is if he's able to convince the court that this lawsuit that concerns the assets that were sold by the bankruptcy court is not actually about those assets. But it is actually about the assets. We know it is because that's what his claims arise out of. He contends that it was something that occurred before the sale, but that just solidifies our position. Because if it took place before the sale, then it could have been and should have been raised at the time to Judge Bowie. And that gets me to my next point. Well, wasn't it raised and didn't Judge Bowie say you don't have any standing because you're the debtor and you don't have any property interests in the estate assets? That's right. That's correct. But that decision by Judge Bowie that Mr. Harris lacked standing is itself a substantive decision for several reasons. Standing, as the Court has noted, is just shorthand for the bankrupt or the party seeking to interject into the proceedings. Say you have no pecuniary interest in the outcome of this case. You don't have any pecuniary interest in those assets, which I submit is what the issue is here today before the Court. It's whether Mr. Harris has any right to challenge now via breach of contract. He was suing not to establish rights in those assets. He was suing to establish a breach of the agreement where I imagine he had some type of interest in his wife receiving $218,000, didn't he? Well, if we're going to go off to that point, you're correct, Your Honor, and his wife did litigate it. And I disagree with Mr. Jasper's analysis. I do think that Mr. Harris and his wife, Sandra, were in privity. Mr. Harris submitted briefs that actually supported his wife's position. I can't get inside Mr. Harris's mind, but I know that in litigation, if a party is submitting briefs on behalf of another party, their interests are defined. So if he had standing to raise a breach of contract agreement, the bankruptcy judge was wrong in saying he didn't have standing. But then you get to the issue of what happened on the appeal. I agree with you. I can't tell you whether he was wrong or right. The issue never made it to the Ninth Circuit because Mr. Harris didn't do the proper things to preserve his appellate rights. That's a different issue. Well, but I see this kind of joining together because under the doctrine of res judicata, Mr. Harris is sort of stuck with what happened. Just because you make a mistake in litigation doesn't give you a right to have a do-over. It doesn't mean you get to come back in subsequent litigation, sue the trustees, sue the trustees' attorney, sue the special representative, and sue the special representative's attorneys. My point is that even if the bankruptcy judge is perhaps erroneous in finding Mr. Harris did not have standing, Mr. Harris didn't preserve that issue on appeal, and therefore he is foreclosed. Correct. And we're stuck with the substantive aspect of the judge's ruling.  Is there any precedent that applies res judicata in a situation where a party did not have a meaningful opportunity to present an issue in the trial court, as in this case, in the bankruptcy court when he was shut down by the judge, but then did not pursue that issue through appeals? Is there any res judicata precedent that says then we can apply res judicata? As the way you've stated it, I'm not aware of any authority. I'm not aware of any case that says what you've stated. I disagree with some of the inferences, I think, that go along with the way you phrased your question, Your Honor. Okay. I might have misphrased it, but he was stopped from presenting that issue in the bankruptcy court initially, right? He was, but he wasn't stopped from presenting his opinion. My position is that if you have a pecuniary interest, and the Ninth Circuit agrees with me on this, you can present your, you have standing. All he had to do was go into the bankruptcy court before Judge Bowie, and there are several Ninth Circuit cases, Enri Fondler, F-O-N-D-I-L-L-E-R, which supports opinion. If you can show that you've got, if you've got a pecuniary interest, you have standing to object. And he didn't, he didn't do that. I would submit again that that was the time, that was Mr. Harris's opportunity to litigate that issue completely. And unless the Court has further questions, I'd like to turn over to my colleagues. Thank you. Good morning. May it please the Court. Eric Deitz of Wingert-Grebbing on behalf of Sandra Whitman. I'm going to address the issues of jurisdiction and immunity. And specifically, I'd like to respond to the arguments of counsel with regard to the Harris-Pine Mills case on the issue of jurisdiction. This is a case where clearly the claims alleged relate to and arose in the underlying bankruptcy matter. They would not have had a life without reference to the predicate facts attendant to the underlying bankruptcy case. And the outcome would have, had the plaintiff obtained relief, affected his bankruptcy estate. Because any recovery, arguably, would have been an asset of the bankruptcy estate. The arguments that we have presented in terms of res judicata, in terms of immunity, in terms of core jurisdiction and related to jurisdiction, these all are as one of the opinions noted. Are you saying that any recovery in a breach of contract action by Mr. Harris would have been part of the bankruptcy estate, even though the settlement agreement was entered into post-petition? Well, the settlement agreement was a part of and related to the adversary proceeding. The standing that plaintiff asserts to make a recovery, to the extent that he had it, was derived from rights attendant to the settlement agreement and an alleged breach of the settlement agreement. It was all related to the manner in which the settlement agreement was administered, thus part of the bankruptcy estate, and how those assets were disposed of. The allegation, as I understand it, being made is that there was an improper transfer. We can debate whether the issue is properly that of the sale under the 363 order or whether it was the transfer. In either event, it was subject to approval throughout. And the fact of the matter is that it was a claim that Mr. Harris brought against the trustee. He was suing my client, the trustee, for her role or the role of her agents with regard to the disposition of assets from the bankruptcy estate. My question was, is it your position that any recovery that he might get would be part of the bankruptcy estate? Would he have to turn it over? Well, arguably, we believe that he would have to because the assets … Has he already been discharged? But the assets that he's suing to recover or the damages that he's suing to claim, he had turned over those assets. He had surrendered those assets, which had been fraudulently conveyed to his wife. He turned them over as part of the settlement agreement. They became part of the bankruptcy estate, and they were disposed per the terms of the bankruptcy estate. But not disposed, according to him, by the terms of the settlement agreement. Well, but, Your Honor, that relates to the immunity issue because all of the actions complained of were the subject of notice. The fact of the matter is that Ms. Harris, I'm sorry, Ms. Whitman was at all times acting pursuant to notice that she had given, gave an opportunity, and within her official capacity, there was an opportunity for Mr. Harris or others to oppose that. There was approval given, and she was candid in the reasons for why she did what she did. So she has a derivative judicial immunity. That has been our position all along. All right. These are non-discretionary acts that she had undertaken or that were undertaken on her behalf as trustee. And under Bennett v. Williams, she is subject to immunity as are the actions of those acting on her behalf as special representative. And here the special representative was authorized from 2000 to receive those assets. A transfer that is complained of was specifically pursuant to the terms of the 2002 Stipulation for Settlement and Term Sheet. It specifically provides that those assets are to be transferred effective November 23, 2002, which in fact they were. They were transferred to the estate. Mr. Swain took possession of them as special representative of the estate. But let's suppose that Ms. Whitman, and this is sheer speculation, I have nothing to say, nothing about upon which basis, but suppose that she were in cahoots with Mr. Swain and it was a kickback scheme to sell it to him cheap, right? Do you still think she would be immune? Your Honor, there was a vetting of all of these transactions. The court, the bankruptcy court. Your answer would be yes. She would still be immune because she gave notice that she was going to do a scheme which would, sub rosa, be a kickback. Provided that there was a candid disclosure. That's the key. If she failed to make a candid disclosure, then that might take it out of the realm of derived judicial immunity. But there is a strong record in this instance that demonstrates that at all times there were candid disclosures. These issues were approved. Ultimately, that's the issue that went up on appeal to this court and was denied. The motion for sale in 2003. Do you want to give some time to your. Yes, I do. May it please the Court. Susan Oliver for Appellees Grant and Zico. And I'd like to address the Barton Doctrine issue briefly, Your Honors. One of Mr. Jasper's primary arguments in opposition to the application of the Barton Doctrine is that Barton does not apply if the case is in front of the appointing bankruptcy court as here. I think those arguments are contrary to the express language of this Court's opinion in Crown Vantage, which talks about if you initiate an action in another forum, you need Barton approval. And I also think it ignores the facts and procedural processes of several Barton cases. By way of example, in the In Re Bay Area material handling case, that's out of the Northern District Court of California, there was a forklift manufacturer or distributor who got into an argument with Yale. Bay Area then sued Yale and thereafter files for bankruptcy. The bankruptcy court appointed special counsel to assert Bay Area's interest against Yale in the context of bankruptcy and allowed the trustee to have their own counsel. They didn't reach a settlement. The trustee reached a settlement of the claims against Yale, and the plaintiffs then sued in state court bringing claims against the trustee and both sets of lawyers. Defendants removed the case to the bankruptcy court and brought 12B motions to dismiss. On appeal, the Northern District Court of California held that those claims were barred by the Barton Doctrine because the plaintiffs had not obtained a leave of court prior to bringing those. The same procedural process took place here. A state court action was removed to the bankruptcy court where a 12B motion to dismiss was made and granted based in part on the Barton Doctrine. So contrary to Mr. Jasper's arguments, I don't think the procedural route that this case took was all that unusual. Secondly, I think Mr. Harris and Mr. Jasper's argument that because we've been in the bankruptcy court that Barton does apply, I think that's in colloquial terms much ado about nothing. This case evolved one way, state court filing, district court, referral to the bankruptcy court. Had Harris done things correctly, he would have sought the bankruptcy court's approval before he initiated this state court claim. And had he done that, per Kashani, a decision of the BAP of this district, the bankruptcy judge in deciding whether to grant permission under Barton for a suit against the trustee, must consider a number of factors. One, is Barton applicable or is this a Section 959 exception? Two, if 959 is not applicable, then do the claims relate to the administration of the bankruptcy estate such that the case would be a court proceeding? Three, are the defendants subject to quasi-judicial or derived judicial immunity and then other issues of race, judicata, principles, et cetera? Here, Judge Bowie did exactly the analysis that the Kashani court calls for in deciding whether to grant a plaintiff permission to proceed against a trustee in another forum. Judge Bowie just did his analysis under the procedural rubric of a 12B6 motion. But it is clear that had the plaintiff done it correctly and asked Judge Bowie's permission ahead of time as required, it would not have been granted or Judge Bowie could have enjoined it. My point is, Harris' case was going to end one way or another, either no permission by the bankruptcy court to proceed, an injunction issued by the bankruptcy court, or as here, a 12B6 motion. So I think Barton clearly applies to bar the claims of Mr. Harris. I know it ended up just where, with the judge who would have given approval. Correct. And I think Judge Bowie did exactly the analysis that he would have done had Mr. Harris sought approval ahead of time before initiating a suit in another forum. He went through the exact Kashani factors and did everything he was required to do to reach an appropriate decision under Barton. Very quickly, on the ultra-virus acts argument of Mr. Jasper and Mrs. Harris, the defendants here had judicial authority to do each and every of the disputed acts at issue, and they had that judicial blessing prior to taking them. Really quickly, on the Mercedes issue, the trustees sought authority for the sale of the Mercedes on certain terms, that is, at a price greater than $70,000. That request was made on February 14th, heard on March 17th, and the bankruptcy court issued its approval order on May 7th, 2003. All of that is documented in the excerpts of record at AA and BB. The Mercedes was then subsequently sold on May 15th, eight days after the May 7th approval order, for $71,860, so meeting the terms required for the sale. And that is found at Exhibit A to Excerpt of Record U within the record. With respect to the Unicus stock, again, we had prior permission. We filed motions on May 6th. They were heard on June 2nd and decided from the bench on that date and with the formal written order being issued on June 30th. There is nothing in the record whatsoever that shows that there was any sale prior to the approval of the courts, and therefore, this cannot be ultra vires under Barton and also goes into the judicial immunity issue previously discussed by Mr. Deitz. Thank you very much. Thank you. You have a minute and 18 seconds. Thank you, Your Honor. I have just a few points to make. First, with respect to res judicata, the decision about standing is only res judicata with respect to the issue of standing. It's not res judicata to any of the other issues that were or could have been raised in the case. There's a case from the Tenth Circuit called Brereton that makes that clear and is cited in our letter brief. And secondly, Mr. Kaplan made what I understood to be a nice record case.  I understand Mr. Kaplan to have made the argument that because Mr. Harris joined in Mrs. Harris's opposition to the 363 sale that that proves they were in privity. We would note first that his joinder was of no legal effect because he lacked standing to participate. We would note secondly that parties often join in portions of arguments made by one another. It does not mean that they're so identified an interest as to represent precisely the same right, which is the test for privity. What right was Mr. Harris seeking to vindicate that Mrs. Harris was not benefited by? Well, Mr. Harris's. As to the breach of the agreement. Mr. Harris was seeking to preserve the residual of his estate, if any. Mrs. Harris was seeking to preserve her right under. I'm sorry. You have to give me greater detail on that. Mr. Harris sued for breach of the agreement, saying Whitman shouldn't have sold to Swain at the price she sold it to. Right? During the 363 sale, you mean? That was his original claim in state court, right? It's a slightly different claim that he's making now than in his opposition to the 363 sale. All right. What was his claim in state court? What was the right he asserted that gave him standing? The right that he asserts now is for damages under the settlement agreement. How was he damaged? Certain assets were transferred in violation of the terms of that agreement, namely in consideration for claims that Mr. Harris submits were released by the mutual release. Is that the only basis of his damages? That's the basis for his current lawsuit. But he had no interest in those assets to begin with. Well, the bankruptcy court seems to have reached that conclusion. So how was he damaged because of the 363 sale and bankruptcy? How was there any money out of his pocket which was already emptied? I think respectfully that would be a matter to be addressed at trial, whether he could prove damages in this case. Well, did he allege damages? He did. He alleged damages. What were the damages? He didn't specifically allege damages. He alleged that he was damaged by the breaches of the settlement agreement. And that's all? The analysis, I'm not and wasn't trial counsel for Mr. Harris. What about Bell Labs? Yeah, the Twombly case. Yeah. We would submit that he's alleged a settlement agreement, he's alleged breaches of the settlement agreement, and that's a plausible claim for relief. No, no. He has to allege facts which make it plausible that he was damaged as a result of the breach. I'll ask you again. One more chance. Correct. Go ahead. How was any money coming out of his pocket now discharged bankrupt by noncompliance with the settlement agreement? Mr. Harris would submit that he would have had a residual from his estate had the settlement agreement been followed. Your argument is that if they sold at the right price and hadn't allowed Swain's pumped-up claims to be paid, there would have been money left over after payment of the debt of the creditors, which would have been restored in the residual agreement to Mr. Swain. Does he make that claim in his state law cause of action? Yes. In this action, he says that that's how his damages were caused. Thank you. Thank you, Your Honor. All right. The case of Harris v. Whitman will be marked submitted. Thank you, ladies and gentlemen, for a very informative presentation. Judge Beyer? Yes. Do you think we could take a 10-minute break before arguing Treadwell? Of course. Thank you very much, and we'll see you back here in 10 minutes' time.
judges: Molloy, Gould, Bea